F I L E D
United States Court of Appeals
Tenth Circuit

JUL 31 2001

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EDWARD D. VANOVER,

       Plaintiff-Appellant,

v.

STEPHANIE J. COOK, formerly
known as Stephanie J. Vanover;
ROBERT D. HECHT; SCOTT,
QUINLAN & HECHT, Law
Partnership,

       Defendants-Appellees.

No. 99-3314

---

**Appeal from the United States District Court
for the District of Kansas
(D.C. No. 98-CV-4166-DES)**

---

James E. Rumsey, Lawrence, Kansas, for Plaintiff-Appellant.

J. Steven Pigg, Fisher, Patterson, Sayler & Smith, L.L.P., Topeka, Kansas, for
Defendants-Appellees.

---

Before **EBEL, BALDOCK** and **KELLY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

Plaintiff-Appellant Edward D. Vanover ("Vanover") appeals the district court's order dismissing his wrongful garnishment action against his ex-wife, Stephanie J. Cook ("Cook"), her attorney, Robert D. Hecht ("Hecht"), and Hecht's law firm, Scott, Quinlan & Hecht (collectively "the Defendants"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In 1996, Hecht represented Cook in two non-wage garnishment proceedings in Kansas state court to collect child support payments which Vanover had failed to honor since 1978. Cook garnished a total of $71,078.21 from an unrelated civil judgment that Vanover had won against an insurance company. Ultimately, the Kansas district court awarded her $53,646 on her claim for unpaid child support and $11,000 in attorneys fees. The award of attorneys fees was reversed on appeal to the Kansas Court of Appeals, but the remaining $53,646 was affirmed. Vanover then sued the Defendants in federal district court seeking actual and punitive damages for wrongful garnishment. The district court dismissed, holding that Vanover was collaterally estopped from relitigating the propriety of the garnishments and that Vanover's complaint was insufficient to allege claims for wrongful garnishment, abuse of process, or malicious prosecution. We now AFFIRM.

## I. BACKGROUND

Vanover and Cook were divorced in Gray County, Kansas district court in September 1976, and the court entered an order for child support and alimony

against Vanover. In 1996, Cook, through her attorney Hecht, filed two non-wage garnishment actions against Vanover to recover unpaid child support obligations. In June she garnished $16,800, and in September she raised this amount to $71,078.21.[1] Both garnishments were addressed to Kansas City Life Insurance Co., which owed Vanover $1.4 million pursuant to a judgment rendered by a federal district court in North Dakota in an unrelated lawsuit. Following a bench trial, a Kansas state district court awarded Cook $53,646 in back child support payments and $11,000 in attorneys fees from the garnished funds. See Vanover v. Vanover, 987 P.2d 1105, 1108 (Kan. Ct. App. 1999).

The Kansas district court made several factual findings which are relevant to this appeal. First, the court held that Vanover had made no formal child support payments after April 1978, although he occasionally made informal payments directly to Cook. The court also rejected Vanover's argument that his child support obligations had become dormant under Kansas law because of Cook's previous failure to take steps to enforce them. Kansas law holds that a judgment becomes dormant after five years if the judgment creditor takes no steps

---

[1]At one point in his brief, Vanover alleges without explanation that Cook garnished a total $106,617.31. See Aplt. Br. at 17. This figure conflicts with other portions of his brief, see Aplt. Br. at 4, and it is not supported in the record. Therefore, we have analyzed the case in light of his allegation that the Defendants garnished $71,078.21 from Vanover. In any case, this discrepancy is not material to our analysis.

to enforce it, and is extinguished if the creditor fails to file a renewal affidavit within the following two years. See Kan. Stat. Ann. §§ 60-2403, 60-2404. Cook took no steps to enforce Vanover's obligation until she filed a renewal notice of the debt in 1993, and then filed her garnishment actions in 1996. However, the district court found that Cook had delayed enforcing her debt only because of Vanover's assurances he would pay without forcing her to resort to the courts, and held that Vanover was therefore estopped from relying on §§ 60-2403, 2404 to bar the debt.

Vanover appealed to the Kansas Court of Appeals, which reversed the award of attorneys fees but dismissed his challenge to the garnishment order for lack of jurisdiction. See Vanover, 987 P.2d at 1110. The court based its jurisdictional ruling on a supersedeas bond which Vanover filed with the court to perfect his appeal. The bond instrument authorized the district court to pay $21,000 directly to Cook in partial satisfaction of the judgment. The Kansas Court of Appeals held that this partial payment constituted acquiescence in the judgment, which under Kansas law cuts off a party's right of appellate review. See Vanover, 987 P.2d at 1108.

Vanover filed the present action in 1998, while his state appeal was still pending. His complaint seeks damages for wrongful garnishment, alleging that the Defendants' acts were wrongful because Cook's failure to enforce the

judgments had caused the majority of them to lapse.[2]  The district court dismissed Vanover's complaint under Fed. R. Civ. P. 12(b)(6).  See Vanover v. Cook, No. 98-4166-DES, slip op. at 1 (D. Kan. Sept. 4, 1999).  First, the district court held that Vanover was collaterally estopped from relitigating the issue of his obligation to Cook by the state district court decision awarding her $53,646.  Second, the district court found that Vanover's allegations were in the nature of malicious prosecution rather than wrongful garnishment, and therefore considered the sufficiency of his complaint in that light.  The district court then held that Vanover failed to allege a claim for malicious prosecution because he had not alleged that the underlying litigation had terminated with a decision in his favor.  Finally, the district court held that Vanover had not alleged a claim for abuse of process because there was no allegation that the Defendants initiated the garnishment proceeding for any reason other than collection of the debt which Vanover owed.

Vanover now appeals the district court's order.

---

[2]Under Kansas law, each month the support becomes due is treated as a separate judgment.  See Michels v. Weingartner, 864 P.2d 1189, 1193 (Kan. 1993).

## II. DISCUSSION

The district court had jurisdiction over this case pursuant to 28 U.S.C. § 1332. Vanover now appeals from a dismissal of the case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

The legal sufficiency of a complaint is a question of law, and therefore we review de novo a district court's grant of a motion to dismiss under Rule 12(b)(6). See Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999). In conducting our review,

> all well pleaded allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the nonmoving party. A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Id. (citations and quotations omitted).

"As a federal court sitting in diversity of citizenship litigation, our duty under Erie v. Tompkins principles is of course to conform to [Kansas's] substantive law." Stauth v. National Union Fire Ins. Co. of Pittsburg, 236 F.3d 1260, 1267 (10th Cir. 2001). In the absence of definitive direction from the highest court of the state of Kansas, we must "predict the course that body would take if confronted with the issue." Id.; see also Carl v. City of Overland Park, 65 F.3d 866, 872 (10th Cir. 1995).

- 6 -

A.    Collateral Estoppel

The first issue presented on appeal is whether Vanover is collaterally

estopped from relitigating the Kansas state court's determination that Cook was

entitled to garnish $53,646 to satisfy Vanover's unpaid debts.  Although Vanover

acknowledges that a federal court typically has no power to relitigate questions of

state law determined by a state court, he contends that in this case the underlying

child support obligations were void under state law, and therefore a judgment

enforcing them has no preclusive effect.

Federal courts must give the same preclusive effect to state court judgments

that those judgments would be given in courts of the state in which the judgments

were rendered.  See 28 U.S.C. § 1738; Wilkinson v. Pitkin County Bd. of

Comm'rs, 142 F.3d 1319, 1322 (10th Cir. 1998).  "The preclusive effect of a state

court decision . . . is a matter of state law."  Id.  In Kansas, collateral estoppel:

> may be invoked where the following is shown: (1) a prior judgment
> on the merits which determined the rights and liabilities of the
> parties on the issue upon ultimate facts as disclosed by the pleadings
> and the judgment, (2) the parties must be the same or in privity, and
> (3) the issue litigated must have been determined and necessary to
> the judgment.

Jackson Trak Group, Inc. v. Mid States Port Auth., 751 P.2d 122, 128 (Kan.

1988).  In this case, the first two elements are satisfied because Vanover

specifically litigated the issue of whether the child support judgments filed

against him were void.  Although the Kansas Court of Appeals did not reach the

- 7 -

substantive question of whether Cook's judgments against him were extinguished, the state district court's decision that they were not remains a valid decision on the merits.

Vanover nonetheless contends that these principles do not apply in this case because Kansas law vests no preclusive effect in a void judgment. Vanover cites Kan. Stat. Ann. §§ 60-2403, 60-2404 in support of his argument that the state court judgment was void. Section 60-2403(a)(1) holds that a judgment becomes dormant if no effort at enforcement is made for five years after it is entered or after the last effort at enforcement. Section 60-2404 holds that a dormant judgment may be revived upon certain conditions by the judgment creditor filing a motion for revivor within two years of the date at which the judgment becomes dormant. However, if the judgment remains dormant for two years or longer, the clerk of the court is required to release the judgment of record upon request. See § 60-2403(b)(1). Kansas law holds that a judgment which lapses pursuant to these statutes is totally extinguished, so that "there is absolutely nothing left of that judgment to which even equitable principles could be applied." Long v. Brooks, 636 P.2d 242, 245 (Kan. Ct. App. 1981) (citation and quotations omitted); see also Clark v. Glazer, 609 P.2d 1177, 1179-80 (Kan. Ct. App. 1980); cf. Sramek v. Sramek, 840 P.2d 553, 556 (Kan. Ct. App. 1994) ("We conclude . . . that a void judgment is an absolute nullity and may be ignored or disregarded,

vacated on motion, or attacked on habeas corpus."). Vanover asserts that this period began to run against each individual monthly child support obligation as it became due, and that the majority of these judgments have been extinguished by statute and are now void. Accordingly, Vanover contends that the Kansas court's order of garnishment to enforce those judgments is also void and lacks any preclusive effect under state law.

We disagree. This is not a case in which Vanover attacks a void judgment. Rather, Vanover attacks the judgment of the Kansas district court which held that Vanover was estopped from challenging the validity of the judgments. Vanover has cited no Kansas law to the effect that a court's specific holding that a judgment is not void lacks preclusive force, and we could find none. Rather, he merely asserts that the state district court got it wrong by holding that equitable principles operated to preserve the underlying obligations. Whether we agree with the reasoning employed by the Kansas court or not, we are required to accord its decision full faith and credit pursuant to 28 U.S.C. § 1738. We therefore consider the merits of Vanover's claim mindful of the facts that the garnishment action was supported by Kansas law.

B.   Wrongful Garnishment

The district court below did not address the merits of Vanover's wrongful garnishment action. Rather, because Vanover specifically alleged that the

defendants acted with malice in bringing Cook's garnishment motion, the district court held that his complaint should be construed as one for malicious prosecution instead of wrongful garnishment. See Vanover, No. 98-4166-DES at 6, 8. The district court relied on Kansas cases that hold a plaintiff cannot avoid the one-year statute of limitations for malicious prosecution claims by recasting a complaint as one for wrongful garnishment or wrongful attachment. See id. at 8 (citing, e.g., Brown v. Westport Finance Co., 145 F. Supp. 265, 267 (W.D. Mo. 1956); Root Grain Co. v. Livengood, 100 P.2d 74 (Kan. 1940)).

Vanover contends that Brown v. Westport Finance Co., the primary case relied upon by the district court, was itself based upon an erroneous interpretation of Kansas law, and he urges this court to reject its reasoning since Brown was decided by a federal court in the Western District of Missouri which was merely trying to predict Kansas law. We need not reach this issue, because even assuming Vanover properly sought to allege a wrongful garnishment claim, his pleading is insufficient to do so.

The Kansas Court of Appeals has held that a party is entitled to garnish property only where the garnishee in fact owes a debt to the garnishor, and where the garnishee owns a beneficial interest in the property garnished. See Miller v. Clayco State Bank, 708 P.2d 997, 1000 (Kan. Ct. App. 1985). Where these facts do not appear, a claim for wrongful garnishment arises even where the garnishing

- 10 -

party acted without malice and had probable cause to believe garnishment was appropriate. See id.; Lukens v. First National Bank, 101 P.2d 914, 918 (Kan. 1940); ("This court has followed the more modern rule which does not recognize probable cause as a sufficient defense to a claim for actual damages for wrongful garnishment."). In addition, Kansas has recognized the applicability of a wrongful garnishment claim where property that belongs to a debtor is statutorily exempt from garnishment. See Owens v. Deutch, 137 P.2d 181, 185 (Kan. 1943); Stark v. Bare, 17 P. 826, 827 (Kan. 1888).

In this case, the state district court found both that Vanover owed Cook a debt, and it is undisputed that Vanover owned a beneficial interest in the funds garnished. There is no allegation that these funds were otherwise exempt from garnishment. Nevertheless, Vanover contends he has alleged a claim for wrongful garnishment because the Defendants garnished approximately 25 percent more money that was ultimately upheld by the Kansas Court of Appeals. Because neither the Supreme Court of Kansas nor any other court of that state which we could find has addressed the question of whether a claim for wrongful garnishment can arise from garnishing more money than is necessary to satisfy a debt, we are required to predict how that court would rule on the issue. See, e.g., City of Overland Park, 65 F.3d at 872. In this case, we predict that Kansas would

hold that a party who garnishes funds in excess of what a court ultimately determines is due is not liable for wrongful garnishment.

A claim for excessive garnishment would constitute a dramatic expansion of Kansas's wrongful garnishment cause of action. Under Kansas law, a claim for wrongful garnishment arises regardless of whether the creditor acted with malice, see, e.g., Dody v. State Bank of Commerce, 108 P. 804 (Kan. 1910), and can arise even in circumstances in which the creditor had probable cause to believe that garnishment was justified, see, e.g., Lukens, 101 P.2d at 918. Were we to accept Vanover's argument in favor of liability for excessive garnishments, we would impose a strict liability burden on plaintiffs in garnishment proceedings accurately to forecast their eventual recoveries in spite of what may be strongly contested legal and factual questions at play in a case.[3]

Neither the Kansas Supreme Court nor any other court of that state has ever suggested that it would impose liability on a claim of wrongful garnishment for garnishing more than is needed to secure a debt . Accordingly, we decline to do

---

[3]To illustrate how such a circumstance would arise, Kansas's rules of civil procedure allow for garnishment of funds and attachment of property before a judgment is rendered in a civil case so long as the moving party files a bond to protect the interests of the alleged debtor. See Kan. Stat. Ann. § 60-715. Thus, it would appear that Kansas law contemplates garnishments may be sought as a matter of course before liability is determined.

so as well.  Hence, we affirm the district court's dismissal of Vanover's claim of wrongful garnishment.

C.    Malicious Prosecution

Even if Kansas would not recognize a wrongful garnishment claim based on these allegations, Vanover contends that he has succeeded in alleging a claim for malicious prosecution.  "To maintain successfully an action for malicious prosecution, the plaintiff must prove that the defendant initiated the . . . proceeding of which complaint is made, that the defendant in so doing acted without probable cause and with malice, and that the proceeding terminated in favor of the plaintiff."  Braun v. Pepper, 578 P.2d 695, 698 (Kan. 1978).  The district court below held that Vanover had not alleged a favorable termination to the underlying suit in light of the state court decision awarding Cook $53,646.82 of the $71,078.21 originally sought.  Therefore the district court held that Vanover had not stated a claim for malicious prosecution of a civil action.  Vanover, in contrast, contends that his success in reducing his liability by approximately $17,400 and the elimination of $11,000 in attorneys fees constitutes a termination in his favor.

The Supreme Court of Kansas has said: "Civil proceedings may be terminated in favor of the person against whom they are brought by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal

- 13 -

of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them." Nelson v. Miller, 607 P.2d 438, 445 (Kan. 1980). Although the Supreme Court of Kansas has apparently never expressly considered whether an outcome can be "favorable" by virtue of the defendant's success in reducing the amount of damages sought, the Kansas Court of Appeals has rejected this argument, at least in the instance of a case which resulted in a settlement during the pendency of an appeal. See Bezona v. Tomson, 960 P.2d 252, 254-55 (Kan. Ct. App. 1998). The facts in Bezona were perhaps more favorable that those in the case at bar to the malicious prosecution plaintiff, who settled after receiving summary judgment from the trial court. See id. Nevertheless, the Kansas Court of Appeals, citing Nelson, held that "we are aware of no 'nuisance value settlement' exception to the rule" that the underlying case must terminate in the plaintiff's favor. Id. It thus held that the defendant was entitled to summary judgment on the malicious prosecution claim. See id.

Although the Supreme Court of Kansas has not expressly adopted this view, the outcome in Bezona is consistent with the widely-accepted theory underlying the favorable termination requirement that "a favorable termination should indicate the innocence or nonculpability of the accused." Miskew v. Hess, 910 P.2d 223, 232 (Kan. Ct. App. 1996); see also Vitauts M. Gulbis, Nature of Termination of Civil Action Required to Satisfy Element of Favorable

Termination to Support Action for Malicious Prosecution, 30 A.L.R.4th 572, 579 (1984) (courts generally do not consider an outcome "favorable" for purposes of bringing a malicious prosecution claim unless the termination was "such as will support the inference that the underlying civil proceedings were instituted without probable cause or foundation").

Moreover, we hold that Vanover has failed to allege that the claim was brought without probable cause. "Probable cause for instituting a proceeding exists when there is reasonable grounds for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious or prudent person in the belief that the party committed the act of which he or she is complaining." Hess, 910 P.2d at 227; see also Nelson, 607 P.2d at 443-44. In determining the existence of probable cause, we look to the "facts and circumstances as they appeared to defendant at the time the prosecution was commenced." Id. at 444. Since the facts surrounding Cook's garnishment action are undisputed, we treat the existence of probable cause as a question of law. See id.

In this case, we believe the Kansas Supreme Court would adopt the prevailing rule that the lower courts' resolution of the garnishment action in favor of Cook establishes the existence of probable cause. See W. Page Keeton et al., Prosser & Keeton on Torts § 120 at 894 (5th ed. 1984) ("A recovery by the plaintiff in the original action usually is regarded as conclusive evidence of the

existence of probable cause, even though it is subsequently reversed, unless it can be shown to have been obtained by fraud or other imposition upon the court."); Vaughan v. Hornaman, 403 P.2d 948, 956 (Kan. 1965) (citing in dicta the rule that "[i]n an action for malicious prosecution . . . the rendition in [the underlying suit] of a judgment for the present defendant conclusively establishes the existence of probable cause for bringing the suit . . . in the absence of fraud, perjury, or other corrupt means in obtaining the judgment"). In the related context of a claim for malicious prosecution arising out of a criminal conviction, the Kansas Supreme Court has held that the plaintiff's conviction in the underlying criminal case conclusively established the existence of probable cause and required the court to dismiss a malicious prosecution claim arising out of that case. See Smith v. Parman, 172 P. 33, 34 (Kan. 1918). We believe the Supreme Court of Kansas would adopt a similar rule with respect to civil actions, and therefore hold that Vanover cannot establish a claim for malicious prosecution.

D.      Abuse of Process

Finally, the district court reviewed Vanover's complaint to determine whether it satisfied the elements of abuse of process, and determined that it did not. See Vanover, No. 98-4166-DES at 6-8. The basis for this argument in the pleadings is Vanover's allegation that the Defendants either knew or should have known that they had no legal claim to Vanover's money when they filed Cook's

garnishment action, and that they either actually realized the garnishment would cause injury to Vanover or they acted with reckless disregard to the probable consequences of their actions. See id. at 6; Aplt. App. at 8.[4]

A plaintiff states a claim for abuse of process in Kansas by alleging:

(1) that the defendant made an illegal, improper, perverted use of the process, (a use neither warranted nor authorized by the process), and (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process, and (3) that damage resulted to the plaintiff from the irregularity.

Porter v. Stormont-Vail Hospital, 621 P.2d 411, 416 (Kan. 1980) (citations and quotations omitted).

An action for malicious prosecution of a civil suit differs from an action for damages for abuse of process. In abuse of process it is said the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself, for an end other than that which it was designed to accomplish.

Ahring v. White, 131 P.2d 699, 702 (Kan. 1943); see also Advantor Capital Corp. v. Yeary, 136 F.3d 1259, 1264 (10th Cir. 1998) ("Malicious prosecution is

_____

[4]Vanover argues in his brief on appeal that the garnishment constitutes abuse of process because the Defendants garnished an excessive amount in order to force him to settle the claim for far more than it was worth. We express no opinion as to whether this allegation would be sufficient to plead a claim for abuse of process, because it did not appear in his amended complaint before the district court. Cf. Sutton, 173 F.3d at 1236 ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." (emphasis added)).

concerned with maliciously causing process to issue, while abuse of process is concerned with the improper use of process after it has been issued." (citations and quotations omitted)). Thus, in order to show abuse of process: "Two elements are necessary . . . one the existence of an ulterior purpose, and second, an act in the use of such process not proper in the regular prosecution of the proceeding." Welch v. Shepherd, 219 P.2d 444, 447 (Kan. 1950). No liability accrues for abuse of process where the defendant institutes a lawsuit to obtain damages or a collection procedure to recover a debt, even though the process is instituted with bad intentions or without probable cause. See Tappen v. Ager, 599 F.2d 376, 380 (10th Cir. 1979) (citing W. Prosser, Law of Torts § 121 (4th ed. 1971)); Wellsville Bank v. Sutterby, 752 P.2d 700, 703 (Kan. Ct. App. 1988) (allegation that bank moved to foreclose on property to enforce a void judgment was insufficient to allege abuse of process).

In this case, the amended complaint alleges that the purpose of the garnishment was "to enforce collection of [Cook's] judgments." This is precisely the purpose of Kansas's garnishment procedure. See Kan. Stat. Ann. § 60-716 (stating that an order of garnishment may issue "[a]s an aid to the enforcement of a judgment").

Accordingly, we affirm the district court's holding that Vanover's complaint is insufficient to support a claim of abuse of process.

## III.  CONCLUSION

For the aforementioned reasons, we AFFIRM the district court's dismissal of Vanover's complaint under Rule 12(b)(6).